**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **CORALATIONS et al.,**<br>    **Plaintiffs,**<br><br>       v.<br><br>**PUERTO RICO AQUEDUCT AND**<br>**SEWER AUTHORITY,**<br>    **Defendant.** | **Civil No. 05-1187 (ADC)** |

## OPINION AND ORDER

Plaintiffs CORALations and the American Littoral Society ("ALS") (collectively "plaintiffs") filed a complaint against the Puerto Rico Aqueduct and Sewer Authority ("defendant" or "PRASA") for declaratory and injunctive relief and for civil penalties. (**Docket No. 1**). This litigation concerns defendant's alleged discharge of effluents from its waste water treatment facility, Ponce Regional Wastewater Treatment Plant ("Ponce RWWTP"), into the Carribean Sea, in excess of that allowed by its permit.

Now before the Court is defendant's objection (**Docket No. 61**) to the Report and Recommendation ("R&R") issued by Magistrate-Judge Bruce J. McGiverin ("Magistrate-Judge" or "Magistrate-Judge McGiverin") on January 18, 2008. (**Docket No. 60**). The R&R recommends that this Court grant in part, and deny in part, defendant's motion for summary judgment (**Docket No. 29**); deny plaintiffs' motion for summary judgment (**Docket No. 31**); and deny defendant's motion to strike plaintiffs' motion for summary judgment (**Docket No. 33**).

After a thorough review of the R&R, and defendant's objections thereto, the Court **ADOPTS**, in full, the R&R. In so doing, the Court **GRANTS** in part and **DENIES** in part defendant's motion for summary judgment; **DENIES** plaintiffs' motion for summary judgment; and **DENIES** defendant's motion to strike. (**Docket Nos. 29, 33, 31**).

**I.    Factual Background and Procedural History**

The Court recounts the factual and procedural history necessary to understand the present objections before it. To the extent the parties do not object to the factual discussion

contained in the R&R (**Docket No. 60**), the Court culls the relevant facts therefrom.

Defendant is a public corporation created under 22 L.P.R.A. § 141, *et seq*. It was created for the purpose of providing the inhabitants of Puerto Rico an adequate sanitary sewage system as well as other related services. 22 L.P.R.A. § 144. Defendant operates the Ponce RWWTP. (**Docket No. 29**, Exh. 1, at 1). Defendant was issued an authorization to discharge effluents, from this plant, into the Caribbean Sea by the National Pollutant Discharge Elimination System ("NPDES"), permit number PR0021563 ("1994 NPDES permit"), which came into effect in 1994 and was set to expire on November 30, 1999. *Id*. at Exh. 1, 2. Defendant was issued a new, modified NPDES permit in 1997 ("1997 NPDES permit"), which renewed the 1994 NPDES permit. (**Docket No. 39**, Exh. 1).

CORALations is a non-profit organization founded in Puerto Rico in 1995. (**Docket No. 29-2**, ¶ 2). ALS is a non-profit organization founded in New Jersey. (**Docket No. 29-2**, ¶ 3). On February 14, 2005, plaintiffs filed suit alleging that defendant had violated the 1997 NPDES permit by exceeding the effluent discharge limits with regard to five "parameters": Biochemical Oxygen Demand ("BOD"), Total Suspended Solids ("TSS"), phenolics, fluoride, and copper. (**Docket No. 1**).

On March 18, 2005, the Environmental Protection Agency ("EPA") requested defendant enter negotiations regarding alleged violations involving several wastewater treatment plants it operated, including the Ponce RWWTP. (**Docket No. 29**-7, Exh. 6). On April 21, 2005, defendant accepted the EPA's request. *Id*. In April of 2006, the negotiations ended and a Consent Decree was agreed upon. (**Docket No. 29**, Exh. 7). Notwithstanding, the EPA filed suit against defendant on June 22, 2006, alleging effluent discharges in violation of section 301 and 401 of the Clean Water Act (CWA), 33 U.S.C. §§ 1311 and 1342, regulations promulgated thereunder and NPDES permits issued thereto, alleging permit violations occurring at fifty-nine (59) waste water treatment plants operated by defendant. *See* Civil

Case No. 06-1624.[1]  In regards to the Ponce RWWTP, the complaint listed NPDES permit violations for phenolics, zinc, flow, dissolved oxygen, and copper. (**Docket No. 29-2**, Attach. 1, at 9).  On January 10, 2007, the Court authorized the agreed upon Consent Decree.[2] (**Civ No. 06-1624, Docket No. 16**).

Sometime before April 1, 2006, defendant applied for a "Section 301(h)" waiver from the original permit requirements under 33 U.S.C. § 1311, requesting more lenient secondary treatment requirements. (**Docket No. 29**, Exh. 4). The waiver request was granted on September 28, 2006. *Id*. Pursuant thereto, PRASA was issued a new NPDES permit ("2006 NPDES permit") containing the modifications from the Section 301(h) waiver. This permit became effective on November 1, 2006, and imposed more lenient secondary treatment requirements for BOD, TSS, and copper than those imposed by the original 1994 permit.  At the same time, however, it was silent regarding phenolic and fluoride limitations. (**Docket No. 29-2**, Exh. 1, 2).

## II.  Standards of Review

### A.  Standards of Review for Objections to a Report and Recommendation

A District Court may refer pending motions to a Magistrate-Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L. Cv. R. 72(a). Any party adversely affected by the recommendation issued may file written objections within ten days of being served with the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."

---

[1] When referring to docket entries in civil case no. 06-1624, those docket entries will be denoted as follows**:  Civ No. 06-1624 Docket No. _.**

[2] The Consent Decree contains the following terms: an assessment of civil penalties in the amount of $1,000,000; stipulated penalties for subsequent violations of certain parameters contained in the Consent Decree (**Docket No. 29**, Exh. 7 at 26-37); interim limitations to the NPDES permits of several plants, including Ponce RWWTP (**Civ. No. 06-1624, Docket No. 16**, Appendix E, at 121); as well as short-term, mid-term and long-term remedial actions to be taken regarding the Ponce RWWTP (**Docket No. 29**, Exh. 7, at 76, 80, 86).

*Sylva v. Culebra Dive Shop*, 389 F. Supp.2d 189, 191-92 (D.P.R. 2005) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)). Failure to comply with this rule may preclude further review by the district court and the Court of Appeals. *See Santiago v. Cannon U.S.A. Inc.*, 138 F.3d 1, 4 (1st Cir. 1998); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992). Similarly, a party objecting to a report and recommendation is "not entitled to a de novo review of an argument never raised" before the Magistrate-Judge. *Borden v. Sec. of Health and Human Svcs.*, 836 F.2d 4, 6 (1st Cir. 1987).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636 (a)(b)(1). *See Templeman v. Cris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharmaceuticals, Inc.*, 286 F. Supp.2d 144, 146 (D.P.R. 2003). Hence, the Court may accept those parts of the report and recommendation to which the plaintiffs do not object. *See Hernández-Mejías v. General Elec.*, 428 F. Supp.2d 4, 6 (D. P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp.2d 114, 125-26 (D.R.I. 2004)).

### B. Summary Judgment Standard

Summary judgment is appropriate when the evidence before the Court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm.*, 370 F.3d 215, 218 (1st Cir. 2004). When ruling on a motion for summary judgment, the Court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey*, 391 F.3d 25, 27 (1st Cir. 2004). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). In addition, the "absence of evidence on a critical issue weighs against the party – be it either the movant or nonmovant – who would bear the burden of proof on that issue at trial." *Alamo-Rodríquez v. Pfizer Pharma.*, 286 F. Supp. 2d 144, 151 (D.P.R. 2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001)).

An issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value. As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252.

### III.  Analysis

#### 1.  Defendant's Objections

In the process of litigating the present dispute, the parties filed cross motions for summary judgment and defendant filed a motion to strike. The Magistrate-Judge resolved these motions and issued his R&R on January 18, 2008 (**Docket No. 60**). Defendant objects to the R&R on the grounds that the Magistrate-Judge improperly found that defendant was not entitled to summary judgment on the following issues: 1) plaintiffs' standing to bring suit; 2) whether the doctrine of *res judicata* bars plaintiffs from bringing the instant complaint in light of the Consent Decree; and 3) whether the doctrine of mootness barred plaintiffs' claims. After a reviewing the law pertaining to the substance of the objections raised and applicable to summary judgment petitions, the Court addresses each of defendant's objections in turn.

#### A.  Standing

The Magistrate-Judge found that plaintiffs had made the requisite showing so as to assert standing to bring suit. Defendant objects by reiterating its argument that plaintiffs fail to show that they have suffered an injury. This Court agrees with the Magistrate-Judge.

In *Laidlaw*, the Supreme Court articulated that environmental groups seeking to bring a citizen's suit under the CWA "must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Plaintiffs have met their burden by showing that their injuries are actual, traceable to defendant's effluent violations and redressable by a favorable decision. More specifically, Gary Horne, a member of CORALations, who frequently uses the waters of the Caribbean Sea for his eco-tour business and personal enjoyment; as well as Mary Ann Lucking, another member of CORALations, who can no longer lead beach and offshore clean-ups as she had done in the past, have standing to sue. (**Docket No. 32**, Exh. 69-70). This is because both parties show that they have suffered an injury in fact, which is both concrete and actual in that Gary Horne has witnessed his eco-touring business suffer significantly due to the decline in coral health and water quality around Ponce as a result of the discharges from the Ponce RWWTP. (*Id*. at Exh. 69). Additionally, the reason why Mary Anne Lucking can no longer lead beach and offshore clean-ups is because the discharges from the Ponce RWWTP poses a serious health risk to those exposed to the waters in the area. (*Id*. at Exh. 70). Further, the injury is fairly traceable to defendant's discharges into the Carribean Sea beyond its permit limitations as this is what is making the water a health risk for those exposed thereto. (*Id*. at Exh. 69-70). In addition, it is likely that a favorable decision will redress plaintiffs' injuries in that it will force defendant to comply with their permit obligations. *Id*.

Second, Dery Bennet, a member of ALS, is also significantly impacted by the decline in the health of the waters of the Carribean Sea inasmuch as he can no longer snorkel or swim near the coral reef since he is unwilling to expose himself to the compromised waters affecting that area. (*Id*. at Exh. 71). Similarly impacted by defendant's actions is Tim Dillingham, also a member of ALS, who utilizes the Puerto Rico costal area in the Carribean Sea for kayaking and snorkeling, and whom, because of defendant's permit violations, will not be able to

utilize the coastal waters without incurring risk to his own health.  (**Docket No. 32**, Exh. 72).

Defendant objects, without citation to case law or statutory authority, arguing that because the only two members of co-plaintiff CORALations living in Puerto Rico, Mr. Horne and Ms. Lucking live in the eastern region of Puerto Rico, and not in the south, where Ponce RWWTP is located, they lack standing to file the instant complaint.  This argument is without merit as there is nothing in either *Laidlaw*, 528 US 167 (2000) or *Lujan v. Defenders of Wildlife*, 504 US 555 (1992), which suggests that lack of close geographic proximity to the place a plaintiff suffered the injury subject to suit, is in and of itself, sufficient to deprive a party of standing to file an otherwise valid claim.  Similarly unavailing is defendant's second argument, namely, that co-plaintiff ALS lacks standing because it was not founded in Puerto Rico.  This is because defendant fails to show why being founded in Puerto Rico is a legal requirement to allege standing to sue, or even that it is germane to the standing issue.  Consequently, defendant is not entitled to summary judgment on this issue.

Therefore, the Court adopts the Magistrate-Judge's recommendation that plaintiffs have standing to bring suit under the CWA.

### B.    Res Judicata

The Magistrate-Judge held that the doctrine of *res judicata* did not preclud plaintiffs' claims against defendant.  Defendant, relying on the Consent Decree (**Civil No. 06-1624, Docket No. 16**) between the EPA and PRASA (the defendant in civil case no. 06-1624), objects to the Magistrate-Judge's finding that there is not sufficient identicality between the claims alleged in civil case no. 06-1624 and those presently before the Court.[3]  This is based on

---

[3] The establishment of *res judicata* requires, *inter alia*, a showing that there has been "a final judgment on the merits in an earlier proceeding, and that there is "sufficient identicality between the parties in the two actions." *González-Piña v. Rodríguez*, 407 F.3d 425, 429 (1st Cir. 2005).  Defendant does not object to the Magistrate-Judge's finding that these elements were satisfied, as they were found in defendant's favor.  However, the Court has examined the Magistrate-Judge's analysis as to these issues, and agrees for the following reasons.  The first element is satisfied because the Consent Decree was authorized by the Court on January 10, 2007, and neither party to this case objects to its finality.  Additionally, the third element is satisfied pursuant to the doctrine of *parens patriae*.  This is because "[i]n a proper *parens patriae* suit, the state or federal government is deemed to represent all of its citizens . .

defendant's assertion that the claims in both suits derive from a common nucleus of operative fact. In the alternative, however, defendant argues that *res judicata* applies because the parties in civil case no. 06-1624 clearly expressed their intent that the Consent Decree cover claims that may not have specifically been asserted therein. This Court thinks otherwise.

In determining whether there is sufficient identicality between causes of action raised in separate suits for *res judicata* purposes, the Court asks whether "the facts form a common nucleus that is identifiable as a transaction or series of related transactions" such that "those facts represent one cause of action." *Apparel Art Intern., Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 584 (1st Cir. 1995). The doctrine of *res judicata* "bars separate suits for the same wrong but not for two or more distinct wrongs." *Citizens Legal Environmental Action Network, Inc. v. Premium Standard Farms, Inc.*, No. 97-6073 CV-SJ-6 2000 WL 220464, *4 (W.D.Mo. Feb. 23, 2000).

The question as to whether two wrongs are separate or identical can be elusive. Clearly, a plaintiff who litigates one lawsuit may not premise a subsequent lawsuit upon a new legal theory but the same facts. *Id.* at 5. However, under 33 U.S.C. § 1365(a)(1), citizens may sue the violator of "an effluent standard or limitation under this chapter . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." This provision has been interpreted to mean that each violation of each particular standard is separately actionable. *See Save Our Bays and Beaches v. City and County of Honolulu*, 904 F. Supp. 1098, 1125 (D. Hawaii 1994) ("The court treats the exceedence of each effluent limitation as a separate violation. It also assumes that the violation of a 30-day average counts as a violation for every day of that month . . . ."). Consequently, each violation of the CWA

---

. . Traditionally, *parens patriae* lawsuits involved a government suing to enjoin alleged nuisances caused by water or air pollution." *U.S. E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394, 1404 (8th Cir. 1990) (quoting *United States v. Olin Corp.*, 606 F. Supp. 1301 (N.D.Ala.1985). Since the consent decree resulted from a suit filed by the United States against defendant, and since "the federal government is 'the ultimate *parens patriae* of every American citizen,'" there is sufficient identicality between the parties in the earlier suit by the EPA on behalf of the United States and the one filed by plaintiffs. *Massachusetts v. Laird*, 451 F.2d 26,29 (1st Cir. 1971)

involves its own nucleus of operative fact. *Citizens*, 2000 WL 220464, at 5. Thus, if we assume that the EPA and plaintiffs are the same party or privies, and if the EPA's claims determine the present lawsuits preclusive reach, then plaintiffs' claims are barred only to the extent they allege the precise violations described in the EPA's complaint.

The EPA sued PRASA alleging, *inter alia*, that PRASA violated their NPDES permits. (**Civ No. 06-1624, Docket No. 1**). The complaint speaks of PRASA's effluent discharge permit violations generally, naming at least fifty-nine (59) water treatment facilities owned and/or operated by PRASA, of which Ponce RWWTP is but one, and stating that: "[t]here has been one or more discharge(s) of a pollutant in excess of the interim and/or final effluent limits prescribed in the NPDES permits . . ." for each named treatment plant. *Id*. at ¶¶ 30-31. With regard to Ponce RWWTP, the complaint only speaks with specificity regarding phenolics, zinc, flow, dissolved oxygen and copper parameters. *Id.* Further, the complaint only mentions the dates March of 2004, with regard to phenolics, zinc, flow, and dissolved oxygen; and August of 2005, with regard to copper. These descriptions are too imprecise to constitute the same claim as those alleged in plaintiffs' complaint. This is because plaintiffs allege effluent discharge permit violations of BOD, TSS, fluoride, copper and phenolics. (**Docket No. 1**, ¶ 2). This means that the EPA's suit could only have preclusive effect over copper and phenolics as these are the only two parameters that overlap. Additionally, since each discharge is a separate violation constituting its own nucleus of operative fact, the only claims asserted by plaintiffs that could be precluded are those in August of 2005, for phenolics; and March of 2004, for copper.

Defendant's alternative argument is that the Consent Decree expresses the clear will of the parties (EPA and PRASA) that it govern all claims that were not specifically asserted therein, which would include plaintiffs' claims. Defendant supports this argument by citation to a letter written by defendant's Executive Director accepting an offer, from the Department of Justice, to enter into pre-filing settlement negotiations. (**Docket No. 29**, Exh. 6). The cited language, which is written in the context of discussing capital improvements, states: "[t]herefore, any timelines developed must allow for the adequate distribution of resources

over time to achieve mutually agreed upon priorities and the ultimate goal of enhancing and sustaining compliance at PRASA treatment works with NPDES permits and in general with the CWA." *Id.* at 2. Clearly, this language does not evince the parties' intent that the Consent Decree resolve claims that were not specifically raised in the complaint. Neither does the following quoted language, which is also put forth to support defendant's assertion: "PRASA is up to the challenge and looks forward to creating a Consent Decree that allows for EPA and PRASA to achieve their respective goals and duties satisfactorily and within a reasonable time." *Id.*

Consequently, plaintiffs' claims are not barred by the doctrine of *res judicata*, except for those copper effluent discharge violations of March of 2004, and phenolic effluent discharge violations of August of 2005.

### C.  Mootness

The Magistrate-Judge recommended that the Court grant defendant's motion for summary judgment except as to plaintiffs' claims that defendant violated their phenolics and fluoride permit limitations. Defendant objects, arguing that their phenolic and fluoride effluent discharges are not subject to limitation, and even if they were, its past violations are not likely to recur. Consequently, goes defendant's argument, plaintiffs' claims are moot. This Court disagrees.

The Supreme Court, in *Gwaltney of Smithfield, Ltd. v. Chesapeak Bay Found., Inc.*, 484 U.S. 49 (1987) held that the "[m]oootness doctrine . . . protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing . . . ." *Id.* at 66-67 (quoting *U.S. v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952)). Accordingly, in determining whether plaintiffs' claims are moot the critical question is whether defendant's conduct justifies the imposition of civil penalties so as to deter future bad conduct, since jurisdiction over citizen suits, brought pursuant to the CWA, can not be sustained for wholly past violations. *See Natural Resources Council of Me. v. Inter'l Paper Co.*, 424 F. Supp. 2d 235, 257 (D.Me. 2006). Thus, where the government has relaxed the NPDES standards, plaintiffs' claims for violations of the superceded permit

become moot where it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

Here, issuance of the 2006 NPDES permit, which relaxed BOD, TSS, and copper discharge limitations, made it absolutely clear that defendant's past permit violations could not reasonably be expected to recur as to those effluents. This is because not a single month's discharge of those effluents, under the old permit, was as high as the 2006 NPDES permit allows. As such, plaintiffs' claims are moot as to those effluents.

Contrastingly, however, the 2006 NPDES permit is silent as to phenolic and fluoride discharge limitations. This means that unlike BOD, TSS and copper effluents, the enlargement of the effluent discharge limitations allowed by the 2006 NPDES permit can not support defendant's argument that its past phenolic and fluoride permit violations are not likely to recur since the effluent discharge limitations have not been increased as to phenolic and fluoride. Notwithstanding, defendant argues oppositely, urging the Court to interpret the 2006 NPDES permit's silence as to phenolic and fluoride to mean that there are no discharge limitations as to these effluents. If the Court were to interpret the 2006 NPDES permit as defendant does, the logical conclusion the Court must reach is that plaintiffs' phenolic and fluoride claims are moot.

The Court, however, must interpret the 2006 NPDES permit as it would a contract or any other legal document. *Student Public Interest Group v. American Cyanamid Co.*, 1985 WL 186630 (D.N.J. Nov. 6, 1985). A close reading of the 2006 NPDES permit renders defendant's argument meritless considering that a provision on page 13 of the permit states: "[n]o toxic substances shall be discharged in toxic concentrations, other than those allowed as specified in the NPDES permit." This language is unambiguous in its meaning, that the recipient of the permit shall not discharge toxic substances, such as fluoride and phenolics, where not "specified" in the permit. As such, the Court rejects defendant's argument that its discharge of phenolic and fluoride are not subject to limitation.

Additionally, that same provision goes on to state that "[t]hose toxic substances included in the Permit Renewal Application, but not regulated by the permit, shall not exceed

those concentrations as specified in the applicable regulatory limitations." (**Docket No. 29**, Exh. 1 at 13). This language also suggests that defendant's phenolic and fluoride discharges are subject to limitation since phenolic and fluoride were both included in the 301(h) waiver application, though, unmentioned in the 2006 NPDES permit. Consequently, defendant fails to discharge his burden of showing that the phenolic and fluoride limitations are different under the 2006 NPDES permit, such that it is absolutely clear that its permit violations could not reasonably be expected to recur. *U.S. v. W.T. Grant Co., 345 U.S. 629* (1953) (holding that the heavy burden of establishing mootness rests with the party seeking its application). Therefore, defendant has failed to show plaintiffs' claims are moot.

Defendant also argues that the Court should consider the EPA's response to comments on the 2006 draft NPDES permit in determining defendant's phenolic and fluoride effluent discharge permit limitations.[4] These statements do not aid defendant in its assertion. The EPA's comments speak to whether the modifications in the amount of permitted discharge limitations will have a negative impact on the environment. However, as previously discussed, there is no evidence that the permit limitations for phenolic and fluoride were

---

[4] The summary of the EPA's findings are as follows:
1. "The modified discharge will not cause violations of the Commonwealth of Puerto Rico water quality standards (WQS) for dissolved oxygen, turbidity, or pH . . . .
2. The applicants modified discharge will not impact public water supplies. The discharge will not interfere with the protection and propagation of a balanced indigenous population (BIP) of marine life. Recreational activities will not be impacted . . . .
3. The proposed discharge will not result in additional treatment requirements on any other point or nonpoint sources . . . .
4. The applicant has demonstrated, in its quarterly pretreatment program compliance reports, that it has met the urban area pretreatment requirements . . . .
5. The discharge effluent will receive at least primary or equivalent treatment and meet criteria established under Section 304(a)(1) of the [Clean Water] Act after initial mixing . . . .
Since the Ponce 301(h) Decision Document was prepared in March 2006, the Ponce RWWTP has continued to be in compliance with the above criteria. In addition . . . the applicant must demonstrate compliance with the 'applicable provisions of State or other Federal laws or Executive Orders."
**Docket No. 29**, Exh. 5, at 1-2.

modified. Consequently, this language does not speak to whether defendant's past permit violations of phenolic and fluoride are likely to recur. Instead, the language only partially speaks to whether modifying the discharge limitations for effluents other than phenolic and fluorine would be harmful to the environment. As such, defendant's continued and selective reliance on this language is troublesome.

Therefore, defendant's motion for summary judgment on the basis that plaintiffs' claims are moot, is **DENIED** and the Magistrate-Judge's Report and Recommendation is adopted.[5]

## IV. Conclusion

After considering defendant's objections, the pleadings on record and R&R, the Court hereby **ADOPTS**, in full, the Report and Recommendation (**Docket No. 60**) and **GRANTS** in part, and **DENIES** in part defendants motion for summary judgment (**Docket No. 29**). In addition to the foregoing, the Court's review of the Report and Recommendation, pleadings and applicable case law leads it to concur with, and **ADOPT**, the Magistrate-Judge's unopposed recommendations that plaintiffs' motion for summary judgment (**Docket No. 31**) and defendant's motion to strike (**Docket No. 33**) be **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 12th day of March, 2008.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[5] The Court recognizes defendant's attempt to further argue the effluent discharge limitations issue in its motion submitting statement under penalty of perjury (**Docket No. 62**). This attempt is untimely. The proper time to bring these arguments was prior to the Magistrate-Judge issuance of its R&R. *Borden v. Sec. of Health and Human Svcs.*, 836 F.2d 4, 6 (1st Cir. 1987) (stating that a party objecting to a report and recommendation is not entitled to a *de novo* review of an argument never raised before the Magistrate-Judge). Yet, defendant included the information in their motion filed on February 22, 2008, three weeks after the objections period had terminated. Consequently, the Court will not consider it. *See Sylva*, 389 F. Supp. 2d at 191 (D.P.R. 2005).